UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
ROBERT NIGRO,

                    Plaintiff,

         -against-                                MEMORANDUM & ORDER
                                                  10-CV-1431(JS)(ARL)
MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.
--------------------------------------X
APPEARANCES:
For Plaintiff:      Jonathan R. Klee, Esq.
                    Klee & Woolf
                    350 Willis Avenue
                    Mineola, NY 11501

For Defendant:      Candace Scott Appleton, Esq.
                    Robert Randolph Schriver, Esq.
                    United States Attorney's Office
                    Eastern District Of New York
                    271 Cadman Plaza East
                    Brooklyn, NY 11201

SEYBERT, District Judge:

          Robert Nigro ("Plaintiff") commenced this action
pursuant to Section 205(g) of the Social Security Act, as
amended, 42 U.S.C. § 405(g), challenging the Defendant
Commissioner of Social Security's (the "Commissioner") decision
that Plaintiff was not disabled prior to February 9, 2009.
Pending before the Court is the Commissioner's motion for
judgment on the pleadings.  For the following reasons, this
motion is DENIED, and this matter is remanded to the

Commissioner for further administrative proceedings consistent with this Memorandum & Order.

BACKGROUND

In this section, the Court sets forth the facts necessary to put its analysis in context. Plaintiff applied for disability insurance benefits and supplemental security income, claiming that he became disabled on March 1, 2004. Following a hearing, Administrative Law Judge Brian J. Crawley (the "ALJ") issued a partially favorable ruling that awarded Plaintiff benefits as of February 9, 2009. On January 29, 2010, the Commissioner issued a final decision denying Plaintiff benefits for the period between March 1, 2004 and February 9, 2009. Plaintiff appeals that decision here.

Plaintiff has a high school diploma and some vocational training in electronics. His prior jobs include a deli worker, a delivery van driver, a department store stockroom worker, a warehouse worker, and a vacuum salesman and repairer. (R. 94, 100.) He stopped working on March 1, 2004 because of pain in his back. (R. 23.) On his initial claim, he indicated that he was suffering persistent, right-sided, lower back pain and pain that radiated into his left thigh. He also reported dizziness that would cause him to fall occasionally. (See R. 24.)

## I. Evidence Before the ALJ

The following is a brief recitation of the evidence most relevant to the present appeal. An overview of the records available to the ALJ is summarized in the letter Plaintiff's counsel sent to the ALJ prior to the hearing. (R. 122-24)

### A. Plaintiff's Testimony

Plaintiff testified about his symptoms, treatment, and daily activities. He has constant or near constant pain in his feet, left thigh, the right side of his back, and neck. The neck pain varies; "[s]ometimes it's ok, sometimes it's not." (R. 30.) His left thigh starts the day numb and eventually becomes more painful than a toothache. (R. 31.) His toes are always numb. (R. 32.) Throughout the day, he gradually loses strength in his legs to the point where he cannot stand. (R. 31.) The numbness and pain eventually become so bad that he just falls down. (R. 35.) These falling episodes happen without warning, (R. 37), and they occur approximately twice monthly. (R. 39.)

Plaintiff said that his pain is such that he usually cannot sleep through the night. (R. 33.) He also experiences headaches three times per week. He has discussed these with his chiropractor, but so far no one has been able to discern their cause. (R. 39.)

To relieve the pain, Plaintiff can lie down and elevate his legs. This sometimes works, but even then he still suffers from muscle spasms. (R. 33.) He sometimes soaks his feet in a foot massage bath, which helps relieve the pain in his foot and thigh. (R. 34.) He does not use a cane or brace. His chiropractor suggested a back strap, but Plaintiff could not get his insurance to cover the expense. (R. 35.) Plaintiff also takes prescription Motrin, which helps moderate his pain. (R. 34.)

Sitting and standing aggravate Plaintiff's condition, and his fingers lock up if he sits for too long. (R. 35). He estimated that he could not sit for more than a half hour, (R. 36), and that he could stand for approximately 20-30 minutes and walk for maybe a block and a half (R. 35).

Plaintiff rents a room in a house on Long Island. Three other people live in the house, and they share a bathroom. (R. 23.) Plaintiff does not need help bathing or dressing, (R. 35), and he can lift a quart of milk (but not two quarts) (R. 37). Because he cannot sit for extended periods, Plaintiff does not drive. His friends will give him rides when necessary, but he cannot sit in a car for long. (R. 28.)

B. Medical Records

Plaintiff's medical history reveals ongoing chiropractic treatment (see R. 148) as well as occasional

4

consultations and examinations by medical doctors. A non-exhaustive description of his medical records includes the following reports and opinions.

Dr. Frank Anderson, a chiropractor, treated Plaintiff for periods during 2004 and 2006. (See R. 129, 152-154). After a March 6, 2006 examination, he opined that Plaintiff suffered "decreased lumbar spine ranges of motion, tenderness to palpation of the lumbar paraspinal musculature (most severe on the right side), loss of sensation over the right anterolateral thigh, and a positive Kemp's test bilaterally for moderate to severe low back pain." (See R. 153.)

Dr. Keith Pastuch, another chiropractor, treated Plaintiff in 2006. (R. 133.) On June 23, 2006, Dr. Pastuch concluded that Plaintiff's prognosis was "guarded." In Dr. Pastuch's opinion, Plaintiff was not capable "of performing his normal working duties and does in fact suffer with a 'Permanent Disability.'" (R. 133.)

On December 7, 2006, Linell Skeene, M.D. performed the consultative examination for the Commissioner and diagnosed Plaintiff with "disc disease of [the] lumbar spine." (R. 139.) Among other things, Dr. Skeene observed that Plaintiff (1) was not in acute distress; (2) was unable to walk on his heels and toes without difficulty; (3) needed no help changing for the exam or getting on and off exam table; and (4) was able to rise

from his chair without difficulty.  (R. 138.)  Dr. Skeene noted that Plaintiff's hand and finger dexterity was intact and that his grip strength was normal, (R. 139), and concluded that Plaintiff had "moderate limitation for prolonged standing, walking and heavy lifting due to limited range of motion of lumbar spine." (R. 140.)

Bradley Cohen, M.D., examined Plaintiff on February 27, 2007, shortly after Plaintiff was involved in a car accident.   Dr. Cohen noted that Plaintiff complained of headaches, dizziness and feeling off-balance.  (R. 167.)  His impression was that Plaintiff's symptoms were consistent with post-traumatic headaches and vertigo, and he recommended a nerve conduction velocity study.  (R. 168.)

## II. The ALJ's Decision

The Commissioner must apply a five-step analysis when determining if a claimant is disabled.  See Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  First, the claimant must not be engaged in any substantial gainful activity.  See 20 C.F.R. § 404.1520(b).  Second, the claimant must prove that he suffers from a "severe impairment" that significantly limits his or her mental or physical ability to do basic work activities.  See 20 C.F.R. § 404.1520(c).  Third, the claimant must show that his impairment is equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  See 20 C.F.R. §

6

404.1520(d).   Fourth, if his impairment or its equivalent is not
listed in the Appendix, the claimant must show that he does not
have the residual functional capacity to perform tasks required
in his or her previous employment.   See 20 C.F.R. § 404.1520(f).
Fifth, if the claimant successfully makes these showings, the
Commissioner must determine if there is any other work within
the national economy that the claimant is able to perform.   See
20 C.F.R. § 404.1520(g).

     The claimant has the burden of proving the first four
steps of the analysis, while the Commissioner bears the burden
of proof for the last step.   See Shaw, 221 F.3d at 132.   "In
making the required determinations, the Commissioner must
consider: (1) the objective medical facts; (2) the medical
opinions of the examining or treating physicians; (3) the
subjective evidence of the claimant's symptoms submitted by the
claimant, his family and others; and (4) the claimant's
educational background, age and work experience."   Boryk v.
Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y.
Sept. 17, 2003) (internal citation omitted).

     Here, the ALJ followed the five-step analysis.   He
determined that Plaintiff had not engaged in meaningful work
since March 1, 2004, the alleged onset date (step one).   (R.
13.)   The ALJ further concluded that Plaintiff suffered the
following severe impairments: "cervical and lumbosacral spine

sprains/strains" (step two). (Id.) He determined that Plaintiff's impairments were not among the list of per se disabling impairments (step three) and went on to determine Plaintiff's residual functional capacity (step four). (Id.) The ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary work and that, prior to February 9, 2009, there were a significant number of jobs in the national economy that Plaintiff could have performed. (R. 17.) Following agency guidelines, the ALJ ruled that Plaintiff's age category changed on February 9, 2009 (approximately three months before Plaintiff's fiftieth birthday). (Id.) Taking into account the adjustments that flowed from Plaintiff's new age category, the ALJ determined that there was not a significant number of jobs in the national economy that he could perform, given his age, education, work experience and residual functional capacity. (Id.) Accordingly, the ALJ determined that Plaintiff was not disabled during the time between his alleged onset date and February 9, 2009, but that he became disabled on that date. (Id.)

In reaching his decision, the ALJ summarily discounted the opinions of Plaintiff's chiropractors:

> Dr. Frank Anderson, D.C., a chiropractor, reported treatment from February to November 2004 and then resuming in March 2006, for moderate to severe low back pain as well as frequent pain and numbness in the

anterolateral right thigh (Exhibit 8F);
reports from Dr. Keith Pastuch, D.C., a
chiropractor, showed treatment from June
through August 2006 and October through
December 2006 (Exhibits 3F and 10F) and a
report from Dr. James Benston, D.C., a
chiropractor, showed treatment from June
2007 through December 2007. (Exhibit 12F).
Pursuant to 20 CFR 404.1513 and 416.913,
evidence from chiropractors does not
constitute the evidence from the "acceptable
medical sources" needed to establish a
medically determinable impairment; thus, the
earliest evidence from an acceptable medical
source is Dr. Cohen's report of May 22,
2006.

(R. 15.) That is all the ALJ wrote concerning the records of

Plaintiff's chiropractic treatment.

        In evaluating Plaintiff's testimony concerning his

symptoms, the ALJ relied heavily on Dr. Skeene's opinion that

Plaintiff had normal dexterity and only moderate physical

limitations. (See R. 16.) The ALJ concluded that although

Plaintiff's medically-determinable impairments could be expected

to produce the claimed symptoms, the alleged severity of those

symptoms was not supported with objective medical evidence.

With respect to Plaintiff's dizziness and falling spells, the

ALJ concluded that there was "no objective medical evidence

whatsoever to substantiate" these allegations. (R. 16.)

<u>DISCUSSION</u>

        In reviewing the ruling of the ALJ, this Court will

not determine <u>de novo</u> whether Plaintiff is in fact disabled.

9

Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotations omitted). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) superseded by statute on other grounds 20 C.F.R. § 404.1560 (internal quotations omitted). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id.

To determine if substantial evidence exists to support the ALJ's findings, this Court must examine the entire record, including any conflicting evidence and any evidence from which conflicting inferences may be drawn when deciding if the findings are supported by substantial evidence. See Gonzalez v. Barnhart, No. 01-CV-7449, 2003 WL 21204448, at *2 (E.D.N.Y. May 21, 2003) (internal quotations omitted). "The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).

II. Plaintiff's Appeal

          In this appeal, Plaintiff challenges the ALJ's determination that Plaintiff had the residual functional capacity to perform even sedentary work during the period between his alleged onset date and February 9, 2009.  Among other things, he contends that the ALJ's decision was not supported by substantial evidence because the ALJ gave no weight to his chiropractors' opinions.  The Court agrees.

          Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a);  20 C.F.R. § 416.967.  Although sedentary work primarily involves sitting, "a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967.  As discussed above, Dr. Anderson found that Plaintiff suffered numbness to his thigh and severe lower back pain.  Dr. Pastuch concluded that Plaintiff was not capable of performing his normal working

duties.[1]   In  the  Court's  view,  these  findings  contradict  Dr.
Skeene's  findings  and  tend  to  corroborate  Plaintiff's  version  of
his  symptoms.    The  ALJ  ignored  these  reports--and  virtually
every  other  piece  of  evidence  from  Plaintiff's  chiropractors,
who  appear  from  the  record  to  have  had  a  treating  relationship
with  Plaintiff  (see  R. 15)--  without  explaining  why.

Although  the  ALJ  need  not  "reconcile  explicitly  every
conflicting  shred  of  medical  testimony,"  he  may  not  unreasonably
reject  all  of  the  medical  evidence  in  Plaintiff's  favor.
Colling v. Barnhard,  245  Fed.  Appx.  87,  88  (2d  Cir.  2007);
Glover v. Barnhart,  No.  06-CV-0195,  2009  WL  35290,  at  *10
(N.D.N.Y.  2009).    And,  though  chiropractors  are  not  "accepted
medical  sources"  whose  opinions  are  entitled  to  controlling  or
even  special  weight,  the  ALJ  should  have  considered  Plaintiff's
chiropractic  records.    See  Mortise v. Astrue,  713  F.  Supp.  2d
111,  126  (N.D.N.Y.  2010);  Fuller v. Astrue,  No.  09-CV-6279,  2010
WL  5072112,  at  *6  (W.D.N.Y.  Dec.  6,  2010);  Carlantone v. Astrue,
No.  08-CV-7393,  2009  WL  2043888,  at  *5  (S.D.N.Y.  July  14,  2009)
("The  opinions  of  chiropractors,  however,  are  acceptable  to  show
the  severity  of  .  .  .  [claimant's]  impairment[s].    Therefore,
the  ALJ  should  consider  the  opinions  of  Dr.  Hall  and  Dr.  Sonn
and  explain  what  weight  he  gives  those  opinions."  (internal

---

[1]  Inasmuch  as  Plaintiff  was  not  working  at  the  time  of  this  exam,
it  is  not  clear  to  what  "normal  working  duties"  Dr.  Pastuch  was
referring.

12

quotation marks and citations omitted)); see also Figueroa v. Astrue, No. 04-CV-7805, 2009 WL 4496048, *12 n.5 (S.D.N.Y. Dec. 3, 2009) (citing SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006)).  How much weight to give their opinions is within the ALJ's discretion, but he may not flatly reject them without explaining his basis for doing so.  See Mortise, 713 F. Supp. 2d at 126; Carlantone, 2009 WL 2043888, at *5; c.f. Figueroa, at *12 (upholding ALJ's decision to give "minimal weight" to chiropractor's opinion where the ALJ explained that the chiropractor's and physician's opinions conflicted). Accordingly, the Commissioner's decision cannot stand.

On remand, in addition to considering Plaintiff's chiropractic records, the Commissioner should take care to consider all of the evidence concerning Plaintiff's dizziness and falling spells.  The Court notes that the ALJ's conclusion that there was no evidence substantiating Plaintiff's allegations of dizziness and falling, (R. 16), is belied by Dr. Cohen's observation that Plaintiff's symptoms were consistent with vertigo (R. 168).

<u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Memorandum & Order.  42 U.S.C.

§ 405(g).  The Clerk of the Court is directed to mark this case

CLOSED.


                                    SO ORDERED.

                                    /s/ JOANNA SEYBERT_____
                                    Joanna Seybert, U.S.D.J.
Dated:      September __30__, 2011
            Central Islip, New York


14